UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------- X
JAIME[1] DOMINGUEZ AND JDD          :
ENTERTAINMENT INC.,                 :
                                    :          **REPORT AND RECOMMENDATION**
                Plaintiffs,         :
                                    :          21 Civ. 7051 (MKB) (VMS)
    -against-                       :
                                    :
DANIEL HERNANDEZ A/K/A TEKASHI      :
69, WILL CORNISH, 6IX9INE TOURING   :
INC., 1ST CALL ENTERTAINMENT LLC    :
AND MURDA MANAGEMENT LLC,           :
                                    :
                Defendants.         :
                                    :
-------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiffs Jaime Dominguez and JDD Entertainment Inc.
(collectively, "Plaintiffs") commenced this action against
Daniel Hernandez (A/K/A "Tekashi69"), Will Cornish, 6IX9INE
Touring Inc., 1st Call Entertainment LLC and Murda Management
LLC (collectively, "Defendants") for several claims arising out
of a concert in Texas as to which Plaintiffs allege Defendant
Hernandez, with the assistance of the other Defendants,
contracted to perform but did not despite being paid, and out of
allegedly defamatory remarks Defendant Hernandez made about the
canceled concert.  See ECF No. 1.  Before the Court is

---

[1] The docket lists Mr. Dominguez as "Jamie Dominguez" whereas the
complaint lists him as "Jaime Dominguez."  See ECF No. 1 ¶ 1.
The Court will use the name on the complaint.  Plaintiffs'
counsel should undertake to conform the docket to the pleadings.

Plaintiffs' motion for a default judgment against Defendants, who and which have not appeared. See ECF No. 11. The undersigned respectfully recommends that the Court

1) deny the motion for a default judgment without prejudice, ECF No. 11;

2) order Plaintiffs to show cause before the undersigned within 30 days of the adoption of this report and recommendation, if it is adopted, as to why

    a. subject matter jurisdiction based on diversity exists given Plaintiffs' failure to disclose the identity of the members of the two Defendant limited liability companies;

    b. venue is proper in this District;

    c. constitutionally sufficient personal jurisdiction exists over Defendants in Connecticut and Florida;

    d. the certificates of default should not be vacated and Plaintiffs be required to complete proper service on Defendants Daniel Hernandez, Will Cornish, 1st Call Entertainment LLC and Murda Management, LLC, within a period of time to be set by the Court because each of whom or which did not appear to have been properly served based on the record before the Court.

I.     **Background**

1.     **Plaintiffs' Complaint**

The following facts are derived from the docket and Plaintiffs' complaint. See ECF No. 1.  Plaintiff JJD Entertainment, a Texas corporation, and Mr. Dominguez are involved in the business of booking and promoting live music concerts and performances. Id. ¶ 9.  Mr. Hernandez is a performing musical artist; Defendants Mr. Cornish, 6IX9INE Touring Inc., 1st Call Entertainment LLC and Murda Management LLC "operate to facilitate the touring and career endeavors" of Mr. Hernandez. Id. ¶¶ 10-11.  Plaintiffs claim that jurisdiction is based on diversity. Id. ¶ 8.

On May 20, 2021, Plaintiffs and Defendants entered into an agreement in which Mr. Hernandez would perform a concert in Humble, Texas on June 27, 2021. Id. ¶¶ 13-14.  According to the agreement, 6IX9INE Touring was to receive $45,000 upon its execution; 1st Call Entertainment and Murda Management were to each receive $15,000 upon its execution; Mr. Hernandez was to receive $75,000 in cash on the day of the event; and Plaintiffs would arrange a $20,000 "flight buyout," meaning that Plaintiffs would have a private flight fly Mr. Hernandez to at or near Humble, Texas. Id. ¶ 15.  Plaintiffs paid the agreed-upon amounts to 6IX9INE Touring, 1st Call Entertainment and Murda Management, and they reserved a private jet for Mr. Hernandez at

3

the cost of $28,649,70.  Id. ¶¶ 16-18.  Plaintiffs also "entered into several other agreements and incurred over $100,000.00" in expenses for venue rental, production costs, security and insurance.  Id. ¶¶ 19, 29.

On June 27, 2021, Mr. Hernandez arrived at the concert venue.  Id. ¶¶ 20-21.  Plaintiffs gave Mr. Hernandez the agreed-upon $75,000.  Id. ¶ 21.  Before Mr. Hernandez was to perform, he "declared his intent to breach the agreement and le[ft] the concert site without performing."  Id. ¶ 22.  Plaintiffs were forced to refund concert tickets and "suffered a loss on all expenses incurred in fulfilling their obligations under the agreement."  Id. ¶ 24.

On June 28, 2021, TMZ published an article containing statements by Mr. Hernandez, in which he stated, knowing that the statements were false, that the contracted price for his performance had been $250,000; that he had received only $70,000; and that he returned the $70,000 after canceling the concert.  Id. ¶¶ 36-37.  Mr. Hernandez also appeared on a livestream in which he stated, knowing that the statements were false, that the contracted price had been $250,000; that he had received only a $45,000 deposit and $70,000 in cash; that it had been "the third time" that Plaintiffs "had failed to pay the full contract price"; and that "the only reason he left the concert site was because he did not get paid."  Id. ¶¶ 42-44.

The statements to TMZ and on the livestream were understood to be directed at Plaintiffs, were republished, and caused Plaintiffs to "have suffered . . . pecuniary and reputation harm, including loss of business opportunities with prominent musical artists."  <u>Id.</u> ¶¶ 38–40, 45–47.

Based on these events, Plaintiffs allege the following claims in the complaint: (1) breach of contract, (2) defamation, (3) unjust enrichment, (4) fraud in the inducement, and (5) breach of the covenant of good faith and fair dealing.  ECF No. 1.

### 2. Procedural History Of This Action

On December 21, 2021, Plaintiffs commenced this action against Defendants.  <u>See</u> ECF No. 1.  By Order dated January 19, 2022, the Court scheduled a conference for May 10, 2022.  <u>See</u> ECF No. 5.  On April 22, 2022, Plaintiffs' summonses against Defendants were returned executed; Plaintiffs provided affidavits of service on the same date indicating that they had had completed service of the summons and complaint on each Defendant.  <u>See</u> ECF No. 7.  (These affidavits of service are discussed in greater detail below, <u>infra</u>, Sec. I.3.)  Defendants did not answer or otherwise respond to the complaint.  By Order dated May 6, 2022, the Court stated that the parties had not filed their proposed case management plan as directed by the January Scheduling Order and required compliance.  <u>See</u> ECF No.

5; ECF Order of 5/6/22.  The Court mailed the Order to Defendants Murda Management in Pompano Beach, Florida; Will Cornish and 1ˢᵗ Call Entertainment LLC at an address in Bristol, Connecticut; and Daniel Hernandez and 6IX9INE Touring Inc. at the same address in New Hyde Park, New York, based on the addresses in the returns of service.  See ECF Order of 5/6/22. Defendants did not appear for the May 10, 2022 conference.  See ECF Order of 5/10/22.

Plaintiffs requested certificates of default, which the Clerk of Court entered.  See ECF Nos. 9-10.  On July 21, 2022, Plaintiffs filed the instant motion, along with an affidavit as to service of the motion.  See ECF Nos. 11, 11-2.  As to each Defendant,[2] Plaintiffs' counsel stated in an affirmation that service of the motion papers had been made as follows, see ECF No. 11-2 at 1-2:

For Daniel Hernandez (A/K/A "Tekashi69") and 6IX9INE Touring Inc., service was mailed by U.S. Postal Service certified mail to the New Hyde Park, New York address and delivered by a process server to the New York Secretary of State, see ECF Nos. 11-2 at 3-6 (outgoing mail receipts), at 7, 9 (affidavit for service on the Secretary of State);

---

[2] Plaintiffs' counsel included information about LL Business Management, but the Court does not address that service as this company is not a defendant in this action.

6

For Will Cornish and 1st Call Entertainment LLC, service was made by a process server at the Henry Street address in Bristol, Connecticut;

For Murda Management LLC, service was made by a process server at the Pompano Beach, Florida address. The attached materials for Defendants Cornish, 1st Call Entertainment LLC and Murda Management showed that the process servers had received the documents for service, but not that the process servers had served these three Defendants. Id. at 10-12. Plaintiffs' counsel affirmed that service of the motion had been made. (This issue is discussed below, infra, Sec. II.2.B.iii.)

In the motion for a default judgment, Plaintiffs did not provide a memorandum in support of the motion; they instead included an affidavit from Mr. Dominguez that substantially restated the allegations in the complaint and did not cite to any law. See ECF No. 11-1. The default motion did not state what kind of damages Plaintiffs sought, and Plaintiffs did not provide an amount of damages or of attorney's fees sought.

The Court scheduled a telephone conference to discuss the default judgment motion; attempted to invite Defendants to attend by mailing the Order, docket sheet and complaint to Defendants at the addresses in the record; and informed Defendants that failure to participate in the litigation may

7

result in a judgment against Defendants.  See ECF No. 12.  On
July 29, 2022, Plaintiffs' counsel filed an affidavit of service
stating that he served the Order on Defendants.  See ECF No. 13.
On or about August 12, 2022, the Court's mailing to Defendant
Hernandez at the New Hyde Park address was returned to the Court
with the handwritten notation "Return to Sender No Longer
Client," and a Postal Service sticker that said, "Return to
Sender Not Deliverable As Addressed Unable To Forward."  ECF
Nos. 14, 16.  On or about August 17, 2022, the Court's mailing
to 61X9INE Touring, Inc. to the same New Hyde Park address was
returned with the same notations.  See ECF Nos. 15, 17.

Defendants did not attend the August 25th conference.  See
ECF 8/25/2022 Minute Entry.  The Court ordered Plaintiffs to
provide supplemental information regarding service by October 7,
2022.  See ECF Order of 8/25/2022.  The Court mailed the Order
to the various addresses available in the record for Defendants.
See id.  This time, the mailings to Murda Management, LLC, in
Pompano Beach, Florida were returned with the handwritten
notation "vacant" and a Postal Service sticker that stated,
"Return to Sender Vacant Unable To Forward."  See ECF Nos. 19-
20.

In response to the Court's August 25th Order, Plaintiffs
outlined their service efforts.  See ECF No. 21.  They claimed
that the addresses used to serve Defendants were "those found

8

incorporated within the terms of the Artist Engagement Agreement . . . ," ECF No. 21 at 1, but the letter did not include the Agreement, see id.  Plaintiffs claimed that the artist "who is a well-known musical performer, has been difficult to serve as he and the other co-Defendant's [sic] have been avoiding this litigation."  Id.  Plaintiffs requested additional time to serve the artist as "Defendant(s) have a reputation for avoiding legal service which is well documented."  ECF No. 21 at 1-2.  Plaintiffs claimed, without elaboration, that they were "using multiple resources to pinpoint [Defendants'] location and time they will be there in order to serve all Defendant(s) effectually and actually."  Id. at 2.  The Court granted the request for additional time for service.  See ECF Order of 10/14/22.

On November 17, 2022, Plaintiffs filed a first motion for service by publication.[3]  See ECF No. 22.  Plaintiffs requested leave to permit service by publication as to all Defendants. See id.  Plaintiffs submitted an affirmation of counsel in support of the motion for alternative service.  Counsel repeated the allegations that Defendant Hernandez has been difficult to serve and that he and other Defendants have been avoiding service.  See ECF No. 22-1 ¶ 7.  Counsel alleged that Plaintiffs

---

[3] That motion is addressed in a separate order filed concurrently with this report and recommendation.

had diligently tried to serve Defendants but that "they have seemingly closed up their locations of service that were incorporated within the terms of the Artist Engagement Agreement." Id. ¶ 8. Counsel stated that Plaintiffs had tried to serve Defendants at "upcoming" concerts and shows "but they have not been able to find any upcoming tour schedule or performances for the Defendant, Daniel Hernandez A/K/A Tekashi 69 for the remainder of this year or into 2023." See id. ¶ 9. They claim not to know of any other addresses for service on Defendants. See id. ¶ 10. Counsel alleged that Plaintiffs "have tried every which way to serve the Defendant(s)" and asked for the Court to approve alternate service. Id. ¶ 12.

### 3. The Affidavits Of Service[4]

#### A. Daniel Hernandez (A/K/A "Tekashi69")

For Mr. Hernandez, the affidavit of service states that the process server delivered the summons and complaint to the New York Secretary of State at One Commerce Plaza, Albany, NY 12231 on March 21, 2022. See ECF No. 7 at 10. Plaintiffs also provide a certified mail receipt, see id. at 8-9, stating that

---

[4] Plaintiffs' proof of service also includes affidavits of service for "LL Business Management," which Plaintiffs purport to have served via the Secretary of State and at the same New Hyde Park address as Mr. Hernandez and 6IXINE Touring. See ECF No. 7 at 18-20. LL Business Management is not a party to this case and is not mentioned in the complaint. See ECF No. 1.

they had mailed the summons and complaint to Mr. Hernandez at a New Hyde Park, New York address, and that it was delivered on March 21, 2022.[5]

### B.  6IX9INE Touring Inc.

For 6IX9INE Touring, the affidavit of service states that the process server delivered the summons and complaint to the New York Secretary of State on March 21, 2022.  See ECF No. 7 at 14.  Plaintiffs also provide receipts showing that, on March 21, 2022, the summons and complaint were mailed and delivered to the same New Hyde Park address at which they had mailed process to Mr. Hernandez.  See id. at 12–13.

### C.  Will Cornish

For Mr. Cornish, the affidavit of service stated that on December 27, 2021, the process server delivered the summons and complaint to 15 Henry Street, Bristol, Connecticut, which the process server stated was Mr. Cornish's "usual place of abode within the state."  See ECF No. 7 at 6.  The process server gave the summons and complaint to Elijah Cornish, identified as Mr. Cornish's "Son/Co-Resident" and "a person of suitable age and discretion."  Id.  The process server identified Elijah Cornish

---

[5] Plaintiffs state that the summons and complaint for both Mr. Hernandez and 6IX9INE Touring were mailed to the New Hyde Park address on March 21, 2021, but this appears to be an error, as the mailing receipt instead attests to mailing on March 21, 2022.  See ECF No. 7 at 2, 9, 13.

as being 19 years old.  See id.  The complaint states only that
Mr. Cornish is an "individual residing in Bristol, Connecticut,"
without mention of the 15 Henry Street address.  ECF No. 1 ¶ 4.

### D.   1st Call Entertainment LLC

For 1st Call Entertainment, the affidavit of service
contains contradictory information.  It states that the process
server delivered the summons and complaint to the 15 Henry
Street address in Bristol on January 4, 2022, and that he
attempted to serve Mr. Cornish, whom the process server
identifies as a "Managing Agent" of 1st Call Entertainment.  See
ECF No. 7 at 16.  The form language of the affidavit states that
the process server "asked the recipient if he/she is authorized
to accept service on behalf of 1st Call Entertainment LLC" and
"the recipient responded in the affirmative."  Id.  It further
states that the process server asked "whether the Recipient was
in the active military service and received a negative reply."
Id.

The "Comments" section of the affidavit provided
conflicting details.  It states that the process server was met
by Elijah Cornish, who said that he would bring his father to
answer.  See id.  After waiting ten minutes, the process server
"[p]osted [the] documents" and "yelled out to Mr. Cornish
stating that he was served on [b]ehalf of 1st Call
Entertainment."  Id.  Mr. Cornish then "came out of the house

and told [the process server] to stop stalking him and his
house." Id.  The process server "advised him he was served."
Id.

### E.   Murda Management LLC

For Murda Management, Plaintiffs allege in the complaint
that it has offices in Pompano Beach, Florida.  See ECF No. 1
¶ 7.  The affidavit of service states that the process server
delivered a copy of the summons and complaint to "Kristian
Fuhse," identified as a "manager," at 4611 N. Federal Hwy., Apt.
139, Pompano Beach, Florida.  ECF No. 7 at 4.

## II. Discussion

Rule 55 of the Federal Rules of Civil Procedure, which
governs motions for default judgment, provides for a two-step
process.  See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc.,
647 F.3d 497, 504-05 (2d Cir. 2011).  First, the moving party
must obtain a certificate of default from the Clerk of the
Court.  See Fed. R. Civ. P. 55(a).  Second, after a certificate
of default is issued, the plaintiff may move for a default
judgment.  See id.  The undersigned respectfully recommends that
Plaintiffs' default judgment motion be denied for multiple
reasons.  First, on the current record, the Court lacks personal
jurisdiction over four of the five Defendants because they were
not properly served.  See, infra, Section II.1.  Second,
Plaintiffs failed to comply with several Local Rules of this

District, including submitting to the Court a copy of the claim in this matter, a proposed order, a proper notice of motion, or a memorandum of law with the motion.  See, infra, Section II.2.  Third, Plaintiffs failed to comply with the Servicemembers Civil Relief Act as to Defendants Hernandez and Cornish.  See, infra, Section II.3.  Fourth, as Plaintiffs did not disclose the membership of the two limited liability company Defendants, the Court cannot confirm that there is complete diversity in this case such that subject matter jurisdiction exists.  See, infra, Section II.4.  Fifth, venue may not be proper in this District.  See, infra, Section II.5.

1.   **The Court Lacks Personal Jurisdiction Over Four Defendants Based On The Current Record As To Service, But It Has Personal Jurisdiction Over One Defendant[6]**

   A.   **Relevant Law As To Personal Jurisdiction In A Default Motion**

      i.   **Valid Service Of Process Is Needed To Obtain Personal Jurisdiction Over A Defendant**

"Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant."

---

[6] In this report and recommendation, the Court discusses the lack of personal jurisdiction for four Defendants based on the failure to serve process, at least as shown in the present record.  It is possible that the Court lacks constitutionally sufficient personal jurisdiction over the non-New York Defendants, given the lack of connection between New York and the events in this action, or between New York and Defendants in Florida and Connecticut.  See 4B Fed. Prac. & Proc. Civ. § 1115 (4th ed.) ("Of course, one must still consider the constitutional requirements that there be a legitimate basis for

14

See Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998).  To that end, "[a] court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process."  Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Son All Indus. Servs., Inc., No. 13 Civ. 4590, 2014 WL 6606402, at *2 (E.D.N.Y. Aug. 4, 2014), report & recommendation adopted, 2014 WL 4536911 (E.D.N.Y. Sept. 11, 2014) (internal quotation marks omitted).  The Second Circuit Court of Appeals has stated: ". . . [W]hen a defendant declines to appear, a plaintiff generally proceeds by means of a motion for default judgment, see generally Fed.R.Civ.P. 55, and we agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."  Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010); see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011).  Some courts have expressed the view that the court should not always exercise this

---

asserting personal jurisdiction and that the means used by the plaintiff be reasonably calculated to give the defendant notice of the proceedings and an opportunity to be heard.").

discretion to conduct a review of whether personal jurisdiction exists.  See Kaplan v. Hezbollah, No. 19 Civ. 3187 (BMC), 2022 WL 2207263, at *2-3 (E.D.N.Y. June 21, 2022).  The Kaplan Court, in supporting the exercise of restraint in reviewing personal jurisdiction in the default context, wrote:

> Personal jurisdiction should be examined on a motion for a default judgment when a plaintiff's submissions clearly show an absence of personal jurisdiction or even when they show that sustaining personal jurisdiction is highly unlikely.  That is just judicial efficiency.  It makes no sense for a court to enter a default judgment when there is a certainty or high likelihood that the judgment will never be enforced because of a lack of personal jurisdiction.

Id. at *2.  This case falls into this subcategory.  For the reasons explained below, the record does not establish that service was properly made, or that personal jurisdiction was obtained as to four Defendants.  As such, sustaining personal jurisdiction over these Defendants is highly unlikely.  For this reason, the undersigned respectfully recommends that the motion for a default judgment should be denied as to these Defendants, Daniel Hernandez, Will Cornish, 1st Call Entertainment LLC and Murda Management LLC.  See Happy Homes, LLC v. Jenerette-Snead, No. 15 Civ. 1788 (MKB) (RML), 2016 WL 6599826, at *3 n.10 (E.D.N.Y. Nov. 7, 2016) ("Ineffective service-of-process is a ground to deny a motion for default judgment.").

16

ii.    **The Court Must Review The Proof Of Service Carefully**

The Clerk of Court's Office's entry of a certificate of default is an administrative act based on the plaintiff's submission of the requisite paperwork; it is not a legal determination that the substance of the information contained in that paperwork satisfies the legal requirements for service under the applicable laws.  Thus, the Court may review the affidavits of service or returns of summons for compliance with the law, and it may resolve doubts as to compliance against the plaintiff.  See Yoon v. Toothsavers Dental Lab'y, Inc., No. 19 Civ. 2283 (ERK) (VMS), 2020 WL 13580466, at *3 (E.D.N.Y. June 22, 2020), adopted by ECF Order (July 27, 2020) (citing Palmieri v. Town of Babylon, 277 Fed. App'x 72, 74 (2d Cir. 2008) ("[I]t was not an abuse of discretion for the district court to resolve against plaintiff the doubts as to whether service on the individual defendants complied with [New York law], and whether service on [defendant] took place at all.")).  This is because service of process is the primary moment that ensures that a defendant knows about the lawsuit and can thus knowingly choose whether to come to court in a timely manner or take a chance on avoiding liability, challenging damages, or reversing a judgment at a later date by different procedural mechanisms.  This opportunity to choose is at the heart of the due process rights

implicated by service of process, and it must be respected even, or possibly especially, in the default motion context.

In assessing whether service has been properly made and personal jurisdiction obtained, the Court carefully reviews the plaintiff's submissions, focusing on the affidavit of service. "Ordinarily, a plaintiff bears the burden of demonstrating that service of process was validly effected." Westchase Residential Assets II, LLC v. Gupta, No. 14 Civ. 1435 (ADS) (GRB), 2016 WL 3688437, at *4 (E.D.N.Y. July 7, 2016) (quoting Khaldei v. Kaspiev, No. 10 Civ. 8328 (JFK), 2014 WL 2575774, at *5 (S.D.N.Y. June 9, 2014)). "A process server's sworn statement of service creates a presumption that service has been effectuated." De Curtis v. Ferrandina, 529 F. App'x 85, 86 (2d Cir. 2013) (citing Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 57 (2d Cir. 2002)). "However, the Court need not assume service was proper, even on a motion for default judgment, if the affidavits are inconsistent or unreliable." Feng Lin v. Quality Woods, Inc., No. 17 Civ. 3043 (DLI) (SJB), 2019 WL 1450746, at *3 (E.D.N.Y. Jan. 28, 2019) (citing Lopez v. Yossi's Heimishe Bakery Inc., No. 13 Civ. 5050 (FB) (CLP), 2015 WL 1469619, at *6 (E.D.N.Y. Mar. 30, 2015)). Assertions in an affidavit of server must be accompanied by "evidence as to how [the process server] obtained that knowledge." J & J Sports Prods., Inc. v. Vergara, No. 19 Civ. 2382 (FB) (VMS), 2020 WL

1034393, at *4 (E.D.N.Y. Feb. 6, 2020) (recommending denying default motion against individual where affidavit of service of motion failed to state how process server knew recipient to be defendant), report & recommendation adopted, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020); see Innovative Sports Mgmt., Inc. v. Triangle Eatery & Bar, LLC, No. 21 Civ. 6909 (AMD) (RER), 2022 WL 18151927, at *5 (E.D.N.Y. Dec. 14, 2022) (holding that process server's conclusory statement that recipient was a "member" authorized to accept service was insufficient where plaintiffs "fail[ed] to allege in the [c]omplaint or otherwise provide facts in the record" to show recipient was authorized to accept service under New York law), report & recommendation adopted, 2023 WL 130835 (E.D.N.Y. Jan. 9, 2023); Shengjian Zhuang v. Hui's Garden Rest. Inc., No. 17 Civ. 7547 (ENV) (SJB), 2019 WL 1578193, at *2 (E.D.N.Y. Feb. 19, 2019) (failure to explain how process server knew that recipient was authorized to accept service is a "facial infirmity" that "suggests service was not made to a person authorized to accept service").

### B.  Service Under The Federal Rules Of Civil Procedure Or State Laws Is Required

#### i.  Service Under Federal Rule Of Civil Procedure 4(e)(1), 4(h)(1)(A)

Federal Rules of Civil Procedure 4(e)(1) and 4(h)(1)(A) permit plaintiffs to serve defendants according to the law of the state where the district court is located or where the

19

service is made.  See Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  The
state laws under which service could be made on the different
Defendants are discussed below, infra, in Sections II.B.iv,
II.B.v and II.B.vi.

> ### ii.    Service On An Individual Under Federal Rule Of Civil Procedure 4(e)(2)

Under Federal Rule of Civil Procedure 4(e)(2), an
individual may be served by "delivering a copy of the summons
and of the complaint to the individual personally" or by
"leaving a copy of each at the individual's dwelling or usual
place of abode with someone of suitable age and discretion who
resides there."  Fed. R. Civ. P. 4(e)(2).  The process server
must provide information in the affidavit of service that
establishes the ground for believing that the person, other than
the defendant, who received the service satisfies the
requirement of the Rule, including that the person resides at
that address.  See Smith v. Smith, 19 Civ. 1638 (AMD) (RML),
2021 WL 4268015, at *2 (E.D.N.Y. Jul. 22, 2021).

> ### iii.    Service On A Corporate Entity Under Federal Rule Of Civil Procedure 4(h)(1)

Service on a "corporation . . . partnership, or other
unincorporated association that is subject to suit under a
common name" can occur "by delivering a copy of the summons and
of the complaint to an officer, a managing or general agent, or
any other agent authorized by appointment or by law to receive

service of process." Fed. R. Civ. P. 4(h)(1)(B); see Shaw v. Specialized Loan Servicing, LLC, No. 14 Civ. 783 (MMM) (MRWX), 2014 WL 12573670, at *1 n.8 (C.D. Cal. June 2, 2014) (applying Rule 4(h) to a limited liability company). "[A] managing or general agent must be invested with powers of discretion and must exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it." J & J Sports Prod. Inc. v. RK Soto Enterprises Inc., 17 Civ. 2636 (WFK) (VMS), 2020 WL 7684894, at *7 (E.D.N.Y. Feb. 7, 2020), report & recommendation adopted, 2020 WL 7041089 (E.D.N.Y. Dec. 1, 2020) (internal quotation marks omitted); Feng Lin, 2019 WL 1450746, at *5 ("A managing agent is not a manager in the colloquial sense, i.e. a person whose role is to supervise the day-to-day work of other employees.").

For New York corporations, the New York Secretary of State is an "agent authorized by appointment or by law to receive service of process" who can accept service permitted under Federal Rule of Civil Procedure 4. Logan v. World Luxury Cars, Inc., No. 15 Civ. 248 (ENV) (PK), 2022 WL 2466834, at *5 (E.D.N.Y. Mar. 30, 2022), report & recommendation adopted, 2023 WL 156878 (E.D.N.Y. Jan. 11, 2023); Trustees of Empires State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Co-op., Pension & Welfare Funds v. Precision Concrete & Masonry, Inc., No. 12 Civ.

21

5645 (ADS) (GRB), 2013 WL 4761146, at *5 (E.D.N.Y. Sept. 3, 2013).

   iv.     **New York Law**

   a)     **Service On An Individual**

Under New York law, "[s]ervice of process must be made in strict compliance with statutory methods for effecting personal service upon a natural person pursuant to CPLR 308." Est. of Waterman v. Jones, 46 A.D.3d 63, 65, 843 N.Y.S.2d 462, 464 (2d Dep't 2007) (internal quotation marks omitted). Section 308 provides that service may be accomplished by (1) personal delivery of the summons "within the state to the person to be served," N.Y. C.P.L.R. Sec. 308(1); (2) delivery of the summons to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and "mailing the summons by first class to the person to be served at his or her actual place of business," N.Y. C.P.L.R. Sec. 308(2); (3) "delivering the summons within the state to the agent for service of the person to be served," N.Y. C.P.L.R. Sec. 308(3); or (4) "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" then mailing to either the person's last known address or actual place of business, only if "service under paragraphs

one and two cannot be made with due diligence," N.Y. C.P.L.R. Sec. 308(4).

Thus, under New York law, service on an individual must be by either personal service or substitute service.  N.Y. C.P.L.R. Sec. 308(1)-(2).  Personal service can be made by directly delivering to the person, or if that is not possible, by "nail and mail" service.  N.Y. C.P.L.R. § 308(4).  When service is not personally made, service must be made a place where a defendant is "physically present with regularity or regularly transacted business."  See Selmani v. City of New York, 100 A.D.3d 861, 862, 954 N.Y.S.2d 580, 582 (2d Dep't 2012) (holding that service was defective where "there was no showing that the appellant was physically present with regularity or regularly transacted business" at the location where process was served).  "In order for a location to be a person's 'actual place of business' for service pursuant to CPLR 308 (2), that person must be shown to regularly transact business at that location."  Katz v. Emmett, 226 A.D.2d 588, 589, 641 N.Y.S.2d 131, 133 (2d Dep't 1996).

In addition, New York law requires that service of process "be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later."  N.Y. C.P.L.R. § 308(2).  Failure to comply with the filing requirement within the time limit renders service incomplete.  See D'Arrigo Bros. Co. of New York v. Met

_Food Basics, Inc._, No. 19 Civ. 5474 (KAM) (VMS), 2021 WL 781745, *4 (E.D.N.Y. Mar. 1, 2021) (holding that plaintiff failed to comply with state law where the affidavits of service were not filed within 20 days); _Stop & Shop Supermarket Co. LLC v. Goldsmith_, No. 10 Civ. 3052 (KMK), 2011 WL 1236121, at *5 (S.D.N.Y. Mar. 31, 2011) ("[E]ven the courts that have held _untimely_ failure to file proof of service to be a 'curable' defect require a plaintiff to obtain permission to make a late filing; a plaintiff's failure to do so voids any action taken by the court even when the plaintiff files late on his own . . . ." (emphasis in original)).

### b)   Service On A Corporation

New York Business Corporation Law Sec. 306(a) provides that "[s]ervice of process on a registered agent may be made in the manner provided by law for the service of a summons, as if the registered agent was a defendant."  N.Y. Bus. Corp. L. Sec. 306(a).  A plaintiff may also serve process "on the secretary of state as agent of a domestic or authorized foreign corporation" by "[p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee."  N.Y. Bus. Corp. L. Sec. 306(b)(1); _Shimel v. 5 S. Fulton Ave. Corp._, 11 A.D.3d

527, 783, N.Y.S.2d 54, 55 (2d Dep't 2004) ("Service of process on a corporate defendant by serving the summons and complaint on the Secretary of State pursuant to Business Corporation Law § 306 is valid service."). Service on the Secretary of State requires that duplicate copies of the summons and complaint be provided to the Secretary of State. See N.Y. Bus. Corp. L. Sec. 306(b)(i). Section 306(b)(i) "provides that service on the Secretary of State, as the statutory agent for a corporation, shall be complete when duplicate copies of the initiatory papers have been personally delivered." Contractors Comp. Tr. v. $49.99 Sewer Man, Inc., 74 Misc. 3d 385, 390 (N.Y. Sup. Ct. 2022) (internal quotation marks omitted); see Perkins v. 686 Halsey Food Corp., 36 A.D.3d 881, 881, 829 N.Y.S.2d 185, 186 (2d Dep't 2007). The Secretary of State may only accept service on behalf of a corporation when there is strict compliance with the statutory framework. See Contractors Comp. Tr., 74 Misc. 3d at 390.

   **c)  Service On A Limited Liability Company**

Under New York law, limited liability companies may be served by "delivering a copy personally to (i) any member of the limited liability company . . . if the management of the limited liability company is vested in its members, (ii) any manager . . . if the management of the [company] is vested in one or more managers, (iii) to any other agent authorized by

appointment to receive process, or (iv) to any other person designated by the limited liability company to receive process, in the manner provided by law for service of a summons as if such person was a defendant." N.Y. C.P.L.R Sec. 311-A(a); see N.Y. Limit. Liab. Co. Law Sec. 303 (permitting service of process by personal delivery to the secretary of state).[7] "CPLR 311-a, which pertains to personal service on limited liability companies, does not authorize service upon an alleged 'managing agent' thereof." See McHale v. Chase Home Fin. LLC, No. 17 Civ. 6089 (JMA) (AYS), 2020 WL 7711826, at *3 (E.D.N.Y. Dec. 29, 2020) (citing Stuyvesant Fuel Serv. Corp. v. 99-105 3rd Avenue Realty LLC, 745 N.Y.S. 2d 680, 681 (N.Y. Civ. Ct. 2002)).

For service on a limited liability company via the Secretary of State, a serving plaintiff must comply strictly with the statutory requirements, including that duplicate copies of the summons and complaint must be delivered to the Secretary

---

[7] New York law provides that individuals may be served by delivering the summons and complaint "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to . . . his or her last known residence or . . . his or her actual place of business." N.Y. C.P.L.R. Sec. 308(2). "Under prevailing case law in New York . . . the alternative methods of personal service discussed within [N.Y. C.P.L.R. Sec. 308(2)] are not available for effecting service on a limited liability company." Mil-Spec Indus. Corp. v. Precision Ammunition, LLC, No. 14 Civ. 7099 (JS) (SIL), 2016 WL 4179945, at *3 (E.D.N.Y. Aug. 5, 2016) (citing Ciafone v. Queens Ctr. for Rehab. & Residential Healthcare, 126 A.D.3d 662, 662, 5 N.Y.S.3d 462, 462 (2d Dep't 2015).

of State.  See Cedar Run Homeowners' Ass'n, Inc. v. Adirondack Dev. Grp., LLC, 173 A.D.3d 1330, 1331, 102 N.Y.S.3d 740, 742 (3d Dep't 2019) (reversing to grant defendant's motion to dismiss for lack of personal jurisdiction for failing to comply with service requirements for a limited liability company).

> **v.    Connecticut Law**
>
> **a)    Service On An Individual**

Under Connecticut law, process on an individual defendant may be served by "leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. Ann. Sec. 52-57(a). "'Abode' for purposes of General Statutes Secs. 52-57(a) is the place where the defendant would most likely have knowledge of service of process and is generally recognized as the place where he is living at the time of service . . . ." Grayson v. Wofsey, Rosen, Kweskin & Kuriansky, 478 A.2d 629, 630 (Conn. Super. Ct. 1984). "Abode service is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed." Hibner v. Breuning, 828 A.2d 150, 155 (2003).

Under Connecticut law, "[a]ll process shall be made returnable not later than two months after the date of the process . . . ." Conn. Gen. Stat. Ann. Sec. 52-48(b).  A party

completes return of process "only by the physical receipt by the clerk's office of the process" within the two-month window. Anderson v. Bank of Am., N.A., No. 16 Civ. 6066103S, 2016 WL 5415381, at *2 (Conn. Super. Ct. Aug. 25, 2016) (citing Rogozinski v. Am. Food Serv. Equip. Corp., 211 Conn. 431, 435, 559 A.2d 1110, 1112 (1989)) ("The only timely way to return process is to deliver it in such a manner as ensures that it is physically in the clerk's office within the prescribed time period."). The date of process "refer[s] to the date of the writ of summons." Prenderville v. Sinclair, 164 Conn. App. 439, 448, 138 A.3d 336, 341 (Conn. App. Ct. 2016). Although Connecticut law permits plaintiffs to amend the return date to correct defects that are "technical in nature," the "date process is returned to court is an historical fact and may not be amended by judicial fiat." Ribeiro v. Fasano, Ippolito & Lee, P.C., 157 Conn. App. 617, 629, 117 A.3d 965, 971 (Conn. App. Ct. 2015); Coppola v. Coppola, 243 Conn. 657, 666, 707 A.2d 281, 285 (Conn. 1998) ("A return date may be amended but it still must comply with the time limitations set forth in § 52-48(b)."). Compliance with Sec. 52-48(b) is mandatory, and a failure to comply deprives the court of subject matter jurisdiction. See Gello v. Richard Stevens, No. 06 Civ. 5006892S, 2008 WL 5216273, at *3 (Conn. Super. Ct. Nov. 7, 2008)

(holding that "plaintiffs' failure to comply with Sec. 52-48(b) deprives [a] court of subject matter jurisdiction").

### b)   Service On A Limited Liability Company

Connecticut law provides that process may be served upon a limited liability company's registered agent.  <u>See</u> Conn. Gen. Stat. Ann. Sec. 34-243r(a).  "If process, notice or demand cannot be served on a limited liability company" via a registered agent pursuant to Sec. 34-243r(a), "service may be made by handing a copy to the individual in charge of any regular place of business or activity of the company or foreign company if the individual served is not a plaintiff in the action."  Conn. Gen. Stat. Ann. Sec. 34-243r(d).  "By its terms, [Section 34-243r(d)] provides for service only if the registered agent cannot be served under subsection (a)."  <u>Gonzalez v. New Beginnings for Life, LLC</u>, No. 19 Civ. 1736 (MPS), 2020 WL 4937990, at *2 (D. Conn. Aug. 24, 2020).  "[W]hen a particular method of serving process is set forth by statute, that method must be followed . . . Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction."  <u>Narayan v. Narayan</u>, 46 A.3d 90, 96 (Conn. 2012) (internal quotation marks omitted).  "When a person upon whom service is to be made is designated by statute, service upon any other person as a purported representative is

inadequate." See Nelson v. Stop & Shop Companies, Inc., 596 A.2d 4, 6 (Conn. App. Ct. 1991).

As with service on individuals, returns of service on a limited liability company must be returned to court within the statutory two-month window. See Conn. Gen. Stat. Ann. Sec. 52-48(b).

### vi.      Florida Law

#### a)      Service On A Limited Liability Company

Under Florida law, a limited liability company "may be served with process required or authorized by law by service on its registered agent." Fla. Stat. Ann. Sec. 48.062(2). "If the LLC has no registered agent or if the plaintiff cannot with reasonable diligence serve the registered agent, [Section 48.062] allows the plaintiff to serve specified members, managers, or designated employees of the LLC." Cohan v. Cape Canaveral Foods Grp. LLC, No. 21 Civ. 1801 (ACC) (GJK), 2022 WL 1289336, at *2 (M.D. Fla. Apr. 29, 2022) (citing Fla. Stat. Ann. § 48.062); Tuscan River Est., LLC v. U.S. Bank Tr. Nat'l Ass'n as Tr. of Greene St. Funding Tr., 351 So. 3d 1233, 1237 (Fla. Dist. Ct. App. 2022) (acknowledging that a manager of a limited liability company may be served only if the LLC does not have a registered agent or an agent cannot be located with reasonable diligence). Service of process requirements under Florida law "must be strictly complied with." Epstein v. Brunel, 271 So. 3d

30

1173, 1175 (Fla. Dist. Ct. App. 2019).  Plaintiffs are obliged to show that the person served was authorized to accept process. See San-Way Farms, Inc. v. Sandifer Farms, LLC, No. 20 Civ. 1969 (CEH) (CPT), 2021 WL 1840769, at *4 (M.D. Fla. May 7, 2021) (finding service invalid under Sec. 48.062 because the plaintiff failed to explain whether the person served was authorized to receive service).

### C. Analysis As To Personal Jurisdiction And Service Of Process

#### i. The Failure To Serve Four Defendants With Service Of Process Should Result In The Denial Of The Motion For A Default Judgment As To These Defendants[8]

##### a) Service On 6IX9INE Touring Inc. Is Sufficient On This Record

Under New York law, Plaintiffs' service on 6IX9INE Touring Inc. is defective.  Plaintiffs failed to state in the affidavit of service that they provided duplicate copies of the summons and complaint to the Secretary of State per B.C.L. Sec. 306(b)(i).  To the extent that Plaintiffs attempted to serve 6IX9INE Touring pursuant to B.C.L. Sec. 306(a) through Mr. Hernandez, Plaintiffs did not offer any evidence that Mr.

---

[8] It is unclear from the filings in this case whether Plaintiffs' position is that they have served Defendants properly, given the affidavits of service, ECF No. 7, the request for certificates of default, ECF No. 9, and this motion for a default judgment, ECF No. 11, or that they have not, given the motion for alternative service, ECF No. 22.  For purposes of the present motion, the Court will address the service-related filings made with the motion for a default judgment.  ECF No. 11.

Hernandez is the registered agent of 6IX9INE Touring. Plaintiffs' attempted service under New York law is also defective because they filed proof of service on 6IX9INE Touring on April 22, 2022, 12 days late, such that the service was untimely under CPLR Sec. 308(2). See D'Arrigo Bros., 2021 WL 781745, at *4; Stop & Shop Supermarket, 2011 WL 1236121, at *5.

Under federal law, however, Plaintiffs properly served 6IX9INE Touring. Although Plaintiffs' service on the New York Secretary of State fails to comply with New York law, it satisfies FRCP 4(h)(1)(B) because the Secretary of State is an "agent authorized by appointment or by law to receive service of process." Logan, 2022 WL 2466834, at *5. Federal law does not impose the requirement of serving duplicate copies of the summons on complaint on the Secretary of State, and it does not require a filing of proof of service within a certain time period, as is required by New York law.

Service on 6IX9INE Touring Inc. is sufficient on this record under federal law, but not under New York law. The Court has thus obtained personal jurisdiction over 6IX9INE Touring Inc.

### b)   Service On Daniel Hernandez Is Defective On This Record

Looking at service on the artist at the center of this controversy, under New York law, the Court notes that Plaintiffs

did not allege that they attempted to serve Mr. Hernandez in person.  They did not explain how delivery to the Secretary of State could satisfy nail-and-mail service.  See N.Y. C.P.L.R. § 308(4).  They did not describe either attempted personal service or completed "nail and mail" service at the New Hyde Park address.  Plaintiffs did not explain how Mr. Hernandez is connected to the New Hyde Park address given in the affidavit of service.  They did not offer evidence that this address is his home address or a business address at which Mr. Hernandez regularly conducted business.

The evidence in the Court's record as to the New Hyde Park address suggests that it is neither Mr. Hernandez's home or business address.  The address used for 6IX9INE Touring Inc. is the same as the address used for Mr. Hernandez, and apparently for the non-Defendant about which Plaintiffs also provided service information.  See ECF No. 7 at 8–10, 12–14, 18–20.  The Court's July 2022 mailings to the New Hyde Park address were returned with the notation that addressees were "no longer client[s]", suggesting that this was not a Defendant's address, but some other entity's address.  See ECF No. 16.  Although Plaintiffs' counsel refers to the contract for the concert as the basis for knowledge of this address, neither the contract nor the relevant clause was provided to the Court.  See ECF No. 22-1 ¶ 3 ("The addresses used were those found incorporated

33

within the Artist Engagement Agreement"). The Court is thus skeptical that the New Hyde Park address was one at which service could have been made on Mr. Hernandez, at least based on the information provided to the Court. See Selmani, 100 A.D.3d at 862, 954 N.Y.S.2d at 582.

In addition, service was allegedly made on March 21, 2022; Plaintiffs filed proof of service for Mr. Hernandez on April 22, 2022. ECF No. 7. Proof of service on Mr. Hernandez was filed 32 days after the purported delivery and mailing took place, and was thus filed twelve days late. Under New York law, the filing was untimely, and service is incomplete. Plaintiffs did not obtain permission to make a late filing. Plaintiffs' service on Mr. Hernandez did not comply with state law.

As for federal law, Plaintiffs service of process on Mr. Hernandez did not comply with FRCP 4. As noted above, service of process did not "follow[] state law for serving a summons." Fed. R. Civ. P. 4(e)(1). Plaintiffs did not deliver the summons and complaint to Mr. Hernandez personally, leave the summons and complaint at Mr. Hernandez's usual place of abode, or deliver a copy to an agent authorized to accept on behalf of Mr. Hernandez. See Fed. R. Civ. P. 4(e)(2)(A)-(C).

For these reasons, service on Mr. Hernandez is deficient, and the Court has not obtained personal jurisdiction over him.

c)   **Service On Will Cornish Is Defective On This Record**

Plaintiffs failed to comply with Connecticut state law because the summons and complaint were not timely returned.  See Conn. Gen. Stat. Ann. Sec. 52-48(b).  The summons and complaint are dated December 22, 2021.  See ECF No. 2.  Plaintiffs did not file proof of service until April 22, 2022, more than two months after the deadline set by Sec. 52-48(b).  See ECF No. 7.  Plaintiffs' failure to timely return the summons and complaint deprives the Court of jurisdiction under Connecticut law.

As for New York law, the affidavit of service for Mr. Cornish reflects that the summons and complaint were delivered on December 27, 2021; Plaintiffs filed proof of service on April 22, 2022.  See ECF No. 7 at 6.  Plaintiffs' service therefore failed to comply with Sec. 308(2) by filing proof of service within 20 days of the delivery.  See N.Y. C.P.L.R. Sec. 308(2).

Under federal law, Plaintiffs did not attempt to personally serve Mr. Cornish, but instead attempted to leave a copy "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P. 4(e)(2)(B).  The process server's affidavit identified Elijah Cornish as the "Son/Co-Resident" of Mr. Cornish, but it did not provide information as to how the process server obtained that information.  A conclusory statement that the Elijah Cornish was

a "Co-Resident" is insufficient to show that both he and Mr. Cornish dwelled at the 15 Henry Street address.  See Smith, 2021 WL 4268015, at *2.  Service under federal law is thus deficient.

Service is thus deficient under Connecticut, New York and federal law, and the Court does not have jurisdiction over Mr. Cornish.

### d)  Service On 1st Call Entertainment LLC Is Defective On This Record

Connecticut law required that Plaintiffs first try to serve the registered agent of 1st Call Entertainment LLC; they could only serve other possible recipients after trying to serve the registered agent.  See Conn. Gen. Stat. Ann. § 34-243r(a). Plaintiffs did not allege that Mr. Cornish was the registered agent for the company or that they tried to serve another person as the registered agent.  Plaintiffs did not show that they were unable to serve the registered agent and served Mr. Cornish as a substitute pursuant to Section 34-243r(d).  See Conn. Gen. Stat. Ann. § 34-243r(a); Gonzalez, 2020 WL 4937990, at *2.

As with Mr. Cornish, Plaintiffs failed to timely return service of process for 1st Call Entertainment.  See Conn. Gen. Stat. Ann. Sec. 52-48(b).  This deprives the Court of jurisdiction under Connecticut law.  See Gello, 2008 WL 5216273, at *3; Ribeiro, 157 Conn. App. at 629.

As to New York law, Mr. Cornish was allegedly served in Connecticut on behalf of 1st Call Entertainment. Plaintiffs did not show that he was authorized by appointment or designated by 1st Call Entertainment to accept service. See N.Y. C.P.L.R Sec. 311-A(a)(i)-(iv). Mr. Cornish is identified by the process server as a "managing agent" of 1st Call Entertainment, but this is not a position authorized to accept service on behalf of a limited liability company under New York law. See McHale, 2020 WL 7711826, at *3.

Under federal law, service on a "managing or general agent" can satisfy the requirements of service under FRCP 4(h). The process server identifies Mr. Cornish as a managing agent only in a conclusory fashion, however, without providing a basis of knowledge as to how he can identify Mr. Cornish as such. See McHale, 2020 WL 7711826, at *3.

In addition, the Court notes that there are serious contradictions within Plaintiffs' affidavit of service for 1st Call Entertainment LLC that call into question whether the service could satisfy any of these statutes. The boilerplate language of the affidavit states that Mr. Cornish affirmed that he was authorized to accept service and was not an active member of the military. See ECF No. 7 at 16. The "Comments" section written by the process server, however, states that Mr. Cornish only appeared as the process server was leaving, and demanded

37

the process server "stop stalking him and his house." Id. The narrative written by the process server did not match with Mr. Cornish's purported disclosures. The Court need not accept allegations made in an affidavit of service that is internally inconsistent. See Feng Lin, 2019 WL 1450746, at *3. The affidavit is thus unclear as to whether Mr. Cornish was personally served with process on behalf of 1st Call.

For these reasons, service as to 1st Call Entertainment is defective under Connecticut, New York and federal law, and the Court does not have jurisdiction over 1st Call Entertainment.

### e)   Service On Murda Management LLC Is Defective On This Record

Plaintiffs did not strictly comply with Florida law of service. They did not allege that they attempted service on a registered agent of Murda Management, that Murda Management did not have a registered agent or that a registered agent could not be located with reasonable diligence. See Tuscan River, 351 So. 3d at 1237. Service on a "manager," as the process server classified Ms. Fuhse, is insufficient service under these circumstances. See ECF No. 7 at 4; Cohan, 2022 WL 1289336, at *2. Plaintiffs did not establish whether Ms. Fuhse was even authorized to accept service of process had Plaintiffs been unable to serve the registered agent. See San-Way Farms, 2021 WL 1840769, at *1.

Under New York law, Plaintiffs did not show that service was properly made.  Plaintiffs did not allege that Ms. Fuhse is a member of Murda Management or otherwise an agent or other person authorized to accept service on behalf of the company. N.Y. C.P.L.R Sec. 311-A(a)(i), (iii), (iv).  The process server affidavit identified Ms. Fuhse as a "manager," but Plaintiffs did not allege whether "management of the [company] is vested in one or more managers," as Section 311-A(a)(ii) requires.  It is not clear from the affidavit whether Ms. Fuhse is a manager of the company or merely a manager of the office to which service was delivered, and the process server did not state whether Ms. Fuhse was authorized to accept service.  The process server's conclusory statement that Ms. Fuhse was a manager did not suffice to show that she could accept service on behalf of Murda Management under New York Law.  See Innovative Sports Mgmt., Inc., 2022 WL 18151927, at *5.

As for federal law, a "manager" is not necessarily a "managing agent" for the purposes of service under Rule 4(h)(1)(B).  See RK Soto Enterprises, 2020 WL 7684894, at *7; Feng Lin, 2019 WL 1450746, at *5.  The process server's failure to state whether Ms. Fuhse was a managing agent or authorized to accept service, and to provide a basis for any such knowledge render service here insufficient under federal law.  See id.; Shengjian Zhuang, 2019 WL 1578193, at *2.

39

Service on Murda Management is defective under Florida, New York and federal law, and the Court lacks jurisdiction over this Defendant.

### 2. Plaintiffs Failed To Comply With Several Local Rules Such That The Default Motion Should Be Denied Without Prejudice As To All Defendants

Local rules "ensure the efficient and expedient execution of justice." Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1049 (2d Cir. 1991). The deficiencies in Plaintiffs' filings are not merely technical. See Radisson Hotels Int'l, Inc. v. Radisson Cars & Limo, Inc., No. 14 Civ. 5927 (ADS) (GRB), 2016 WL 1068684, at *2 (E.D.N.Y. Feb. 25, 2016), report & recommendation adopted, 2016 WL 1069075 (E.D.N.Y. Mar. 17, 2016). Plaintiffs' failure to comply with several Local Rules of this District that relate to the default judgment is a sufficient reason to deny the motion without prejudice. See, e.g., United States v. Hamilton, No. 18 Civ. 2011 (ADS) (SIL), 2019 WL 6830318, at *3 (E.D.N.Y. Nov. 26, 2019) (denying motion for default judgment because the plaintiff failed to follow Local Rule 55.2(c)) (collecting cases), report & recommendation adopted, 2019 WL 6828276 (Dec. 13, 2019). The court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). As discussed below, in considering the Local Rules that apply to this motion, Plaintiffs' failures

to comply were sufficiently serious that they should not be
excused.  See Transatlantic Auto Grp., Inc. v. Unitrans-PRA Co.,
No. 08 Civ. 5070, 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9,
2011) (noting the local rules relating to default provide more
protection for non-appearing defendants than the Federal Rules
of Civil Procedure to promote fairness and efficiency), report &
recommendation adopted, 2011 WL 4543838 (E.D.N.Y. Sept. 29,
2011); Committee Note, Loc. Civ. R. 55.2

### A.    Local Rules With Which Plaintiffs Did Not Comply On The Motion For A Default Judgment

#### i.    Local Civ. R. 55.2(b)

First, Local Civil Rule 55.2 governs the procedure for
requesting a default judgment.  It provides, in relevant part,
that a party seeking a judgment by default shall apply to the
Court as described in Fed. R. Civ. P. 55(b)(2), and shall append
to the application (1) the Clerk's certificate of default, (2) a
copy of the claim to which no response has been made, and (3) a
proposed form of default judgment.  Local Civ. R. 55.2(b).

#### ii.    Local Civ. R. 7.1

Local Civil Rule 7.1, which governs motions, applies to motions
for a default judgment.  Local Rule 7.1 provides that:

> [A]ll motions shall include the following motion
> papers: (1) A notice of motion, or an order to show
> cause signed by the Court, which shall specify the
> applicable rules or statutes pursuant to which the
> motion is brought, and shall specify the relief sought
> by the motion; (2) A memorandum of law, setting forth
> the cases and other authorities relied upon in support

41

> of the motion, and divided, under appropriate
> headings, into as many parts as there are issues to be
> determined; and (3) Supporting affidavits and exhibits
> thereto containing any factual information and
> portions of the record necessary for the decision of
> the motion.

Local Civ. R. 7.1(a).  The purpose of a notice of motion is to "fairly and adequately appris[e] [the parties] of the nature and basis of the application."  Fiedler v. Incandela, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016) (quoting Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc., Nos. 10 Civ. 347 (ENV) (RLM) & 11 Civ. 3966 (ENV) (RLM), 2013 WL 5725987, at *2 (E.D.N.Y. Oct. 21, 2013) The notice does this by "specify[ing] the applicable rules or statutes pursuant to which the motion is brought, and . . . the relief sought by the motion."  Local Civ. R. 7.1(a)(1). Including the proposed order and copy of the pleading with the motion for a default serves a similar purpose by providing a non-appearing defendant with information about the basic claims and sought-after relief.

Courts can disregard the failure to file a notice of motion or other papers.  This most commonly occurs when another document in the filing provides the necessary information, for example, when "a memorandum of law and supporting documents that allow the Court to consider the proposed motion" have been filed, either with the original motion or as a supplement. Fiedler, 222 F. Supp. 3d at 155 (quoting Gigantino v. Turner

Constr. Co., No. 14 Civ. 3619 (RRM) (RER), 2016 WL 5107062, at *1 n.1 (E.D.N.Y. Sept. 19, 2016)).

The purpose of the filing of the memorandum of law is to inform the Court and the nonappearing defendants of the theories of law upon which the plaintiff relies.  See 1077 Madison St., LLC v. New York State Dep't of Taxation & Fin., No. 19 Civ. 954 (NGG) (CLP), 2019 WL 7593275 (E.D.N.Y. Nov. 13, 2019), report & recommendation adopted, 2020 WL 249006, at *1 (E.D.N.Y. Jan. 16, 2020) (denying motion for a default judgment and foreclosure where the plaintiff did not submit a memorandum law with legal citations as to its theory of the case such that it was unclear on what legal grounds the plaintiff proceeded).  Given that in a default posture, a defendant has most likely never participated in an action, the Court and that defendant are uninformed of the legal conclusions that a plaintiff believes can be drawn from the facts alleged and claims stated in the operative pleading. The Court and non-appearing defendant have also never been informed of how the plaintiff believes that the requirements for a default have been met and how damages can be determined. Thus, although compliance with Rule 7.1 may seem unnecessary when an opposition is unlikely to be filed, service of these documents serves an important purpose of analytically linking the pleadings to the hoped-for default judgment.

Failing to serve and file one or more of the required documents supports denying a motion for a default.  See Ahn v. Sun Cleaners Inc., No. 19 Civ. 05919 (DLI) (PK), 2021 WL 7186026, at *3 (E.D.N.Y. Feb. 1, 2021), report & recommendation adopted by ECF Order (E.D.N.Y. Mar. 18, 2022); Yang Ming Marine Transp. Corp. v. JAC Shipping, Inc., No. 20 Civ. 1118 (FB) (RER), 2021 WL 7908014, at *2 (E.D.N.Y. Jan. 7, 2021) (collecting cases that failure to provide a memorandum of law on default motion is sufficient basis to deny the motion); Exact Invs. LLC v. Vesnaverboth, No. 17 Civ. 6109 (DRH) (ARL), 2021 WL 8316287, at *1 (E.D.N.Y. July 12, 2021), report & recommendation adopted sub nom., Exact Invs. LLC v. Vesnaver, 2021 WL 8316285 (E.D.N.Y. Sept. 21, 2021).  "Although courts are not required to deny a motion for failure to comply with Local Rule 7.1, this procedural violation may warrant a denial, especially when accompanied by other shortcomings."  Morales v. Los Cafetales Rest. Corp., No. 21 Civ. 1868 (AMD) (RER), 2023 WL 375647, at *3 (E.D.N.Y. Jan. 3, 2023), report & recommendation adopted, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023) (denying motion for a default judgment where, inter alia, the plaintiff failed to submit a memorandum of law to support motion).

### iii.    Local Civ. R. 55.2(c)

The Local Rules give particular attention to the service of default motions.  Local Civ. R. 55.2(c) requires that "all

44

papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) above shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual).  Proof of such mailing shall be filed with the Court."  Local Civ. R. 55.2(c).  If the mailing is returned, a supplemental affidavit shall be filed with the Court setting forth that fact, together with the reason provided for return, if any." Local Civ. R. 55.2(c).  Service of the motion on non-appearing defendants is of particular importance, because "mailing notice of such an application is conducive to both fairness and efficiency[.]"  Committee Note, Loc. Civ. R. 55.2; see D'Arrigo Bros., 2021 WL 781745, at *5 (providing failure to comply with Local Rules as to a default judgment, including requisite mailings, as a separate reason to deny the motion). It is important that individuals be given notice that a party is asking the Court to enter a default judgment against them.

The Eastern District has determined that the best way to ensure such notice is provided is to require that a motion be served on the individual's residence.  See Miss Jones LLC v. Brown, No. 17 Civ. 898 (NGG) (VMS) (E.D.N.Y. Apr. 14, 2020), report & recommendation adopted, 2020 WL 5503535 (E.D.N.Y. Sept. 11, 2020); see Miss Jones, LLC v. Viera, No. 18 Civ. 1398 (NGG)

45

(SJB), 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019) ("The motion for default judgment was not served properly on [defendants].  As a result, the motion must be denied with respect to these defendants."), report & recommendation adopted, 2019 WL 955279 (E.D.N.Y. Feb. 26, 2019).

A plaintiff must provide some evidence that the addresses used for service of the motion for default are the last known business address and residence address for the corporate defendants and individual defendants, respectively.  See Vergara, 2020 WL 1034393, at *5.  Generally, courts look to the pleading or motion papers to determine whether plaintiff properly mailed its default judgment papers in accordance with Local Rule 55.2(c).  See, e.g., Allstate Ins. Co. v. Abramov, No. 16 Civ. 1465 (AMD) (SJB), 2019 WL 1177854, at *3 (E.D.N.Y. Feb. 21, 2019) (looking to the amended complaint to determine that address for mailing was improper), report & recommendation adopted, 2019 WL 1172381 (E.D.N.Y. Mar. 13, 2019).  As to the requirement that the default motion be mailed to the individual defendant's residence, serving an individual defendant at the defendant's place of business does not satisfy Local Rule 55.2(c).  See Reyes-Fana v. Moca Grocery NY Corp., No. 21 Civ. 4493 (AMD) (RER), 2022 WL 5428688, at *3 (E.D.N.Y. Aug. 16, 2022), report & recommendation adopted, 2022 WL 4094241

(E.D.N.Y. Sept. 7, 2022) (citing Vergara, 2020 WL 1034393, at *5, & Abramov, 2019 WL 1177854, at *3).

Courts have excused a plaintiff's failure to strictly comply with the Local Civil Rules if a defendant received fair notice of the motion for default judgment. See Matter of D'Ancona, No. 19 Civ. 5492 (EK) (VMS), 2021 WL 4482615, at *2 (E.D.N.Y. May 24, 2021), report & recommendation adopted, No. 19 Civ. 5492 (EK) (VMS), 2021 WL 4480676 (E.D.N.Y. Sept. 30, 2021) (citing Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C, & 15D, AFL-CIO v. Coastal Env't Grp. Inc., No. 18 Civ. 5791 (LDH) (SJB), 2019 WL 5693916, *3 n.7 (Aug. 30, 2019), report & recommendation adopted by ECF Order (E.D.N.Y. Mar. 31, 2020); RLI Ins. Co. v. May Const. Co., No. 09 Civ. 7415 (PKC), 2011 WL 1197937, at *4 (S.D.N.Y. May. 22, 2011); In re Supreme Specialities, Inc., 330 B.R. 40, 47 (S.D.N.Y. 2005)). Sometimes special circumstances will excuse compliance with this mailing rule, but without such an excuse, strict compliance is required. See Reyes-Fana, 2022 WL 5428688, at *4 (allowing plaintiff to supplement default motion record with proof of mailing to the proper address); Guanglei Jiao v. Shang Shang Qian Inc., No. 18 Civ. 5624 (ARR) (VMS), 2020 WL 6370148, at *8 (E.D.N.Y. Aug. 11, 2020), report & recommendation adopted, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (waiving service requirement where

47

defendants had provided court with their contact information which plaintiffs used to serve default motion).

### B.   Analysis As To Plaintiffs' Failure To Comply With Several Local Rules

#### i.   Plaintiffs Failed To File A Proper Notice Of Motion

We look first at Plaintiffs' failure to file a proper notice of motion. Plaintiffs' purported notice of motion did not specify the relief sought or the rules or statutes under which Plaintiff brought the motion. It did not adequately apprise either Defendants or the Court of the nature and basis of Plaintiffs' motion. ECF No. 11 (ECF page no. 1). In this case, given the limited detail in the complaint and without a memorandum of law or similar submission, the Court is left to guess as to why Plaintiffs may be entitled to some relief. Such speculation is not a good use of the Court's resources, and in any event, would not be fair to Defendants because they would lack any information as to the legal theories or analysis that the Court may be entertaining in deciding the motion for a default judgment. Plaintiffs' additional failure to provide the complaint and a proposed order to Defendants exacerbated these difficulties.

### ii.    Plaintiffs Failed To File A Proper Memorandum Of Law

We next look at Plaintiffs' failure to file a memorandum of law as required by Local Rule 7.1.  The affidavit of Mr. Dominguez, which may be Plaintiffs' effort at a memorandum of law, basically recited the allegations of the complaint.  See ECF No. 11-1.  It lacked an analysis of the grounds for the substantive relief request, the standards to be applied on a motion to dismiss, or a basis for calculating damages.  In fact, it did not contain any legal citations.  See ECF No. 11-1.  As with the notice of motion, the Court could excuse the omission in whole or in part if the complaint were clear as to the factual and legal grounds for the claims, if the law had been presented elsewhere, or if Plaintiff had separately provided some factual basis for the claimed damages, such as in an informative affidavit from Plaintiff Dominguez.

Such is not the case here.  Instead, the omission of the memorandum of law placed a significant burden on the Court (and presumably on Defendants, were they to have received the motion papers).  As is evident from the extended analysis above as to failings in service of the summons and complaint, the Court had to expend significant effort to parse through Plaintiffs' submissions as to service to determine whether Defendants were served.  Had Plaintiffs' counsel submitted a memorandum of law,

49

counsel could have explained how the service alleged to have been made satisfied the applicable law.  Without such a document, the Court had to scrutinize the service-related submissions and research federal, New York, Connecticut and Florida law without any input from Plaintiffs' counsel as to what service standard they were endeavoring to meet.

As to the substance of Plaintiffs' claims and liability, the Court has numerous questions as to whether Plaintiffs have adequately pleaded their causes of action, even under the lenient standards that would be applied in a motion for a default judgment.  Some questions raised by the complaint on this motion, which a memorandum of law submitted on a properly prepared default judgment motion would have addressed, are:

a) Plaintiffs claim to have entered into an agreement with Defendants, but they did not state whether the agreement was oral or in writing, so the Court cannot determine what legal standards to apply to the agreement.

b) Plaintiffs did not provide any information about possibly relevant terms that are often found in contracts in the entertainment industry, such as a choice-of-law provision, a default provision, or limitations on or availability of different types of damages and attorney's fees.

c) Plaintiffs did not explain why personal liability against the artist should be available on the contract claims.  See Mirage Ent., Inc. v. FEG Entretenimientos S.A., 326 F. Supp. 3d 26, 32–35 (S.D.N.Y. 2018) (on counterclaims, concert promoters were not entitled to pierce corporate veil to support breach-of-contract claims under New York law directly against artist).

d) Plaintiffs did not explain why their pleadings are sufficient to set forth claims for defamation.  See Sebastiani v. Brooklyn Hosp. Ctr., No. 19 Civ. 253 (PKC) (ST), 2019 WL 3281010, at *3 (E.D.N.Y. July 19, 2019) (describing elements of a defamation claim under New York law).

e) Plaintiffs claim that Defendants are jointly and severally liable for the alleged defamatory statements but did not explain why the artist's touring company or others associated with the company would have liability for the artist's alleged statements on social media or broadcast. See Mirage, 326 F. Supp. 3d at 35–36 (only artist had possible liability for allegedly defamatory statements, not artist's corporation or associated professionals).

As to the substance of Plaintiffs' claims and damages, although Plaintiffs asked the Court to enter a default judgment in their favor against Defendants, they did not provide any basis for

calculating damages.  As well as these questions concerning liability, even if the Court were to surmount them, the record did not provide evidence upon which to calculate and to award most of the damages that Plaintiffs requested in the complaint. The amount of damages awarded, if any, must be ascertained "with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  Plaintiffs did not offer evidence that would satisfy this default judgment requirement for an award of damages.  See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).

      **iii.**      **Plaintiffs Did Not Show That They Properly Served The Motion For A Default Judgment On Four Defendants**

We next look at whether Plaintiffs complied with Local Rule 55.2(c) to serve a copy of motion papers on the defaulting Defendants.  In mailing the motion papers, Plaintiffs relied upon the same addresses to which they had served the summons and complaint.  See ECF Nos. 7, 11.  Some of this analysis overlaps with that for the failure of service discussed above, supra, Section II.1.C.

We look closely at the information that Plaintiffs provide about the mailing of the motion for a default judgment.  First, we consider service of the motion on the individual Defendants' residences.  Under the Local Rule, the default motion had to be sent to Mr. Hernandez's residence.  The record did not contain

any information to suggest that the New Hyde Park is his residence.  Instead, as discussed, <u>supra</u>, Section II.1.C.i.b, this address appears to be a business address, given that mailings to that address were returned with the notation "no longer client[s]."  ECF No. 16.  Serving an individual at a business address does not satisfy Local Rule 55(c).  <u>See Reyes-Fana</u>, 2022 WL 5428688, at *3.  There is no reason to understand service on the Secretary of State as a substitute for residence service.

For Mr. Cornish, his presence at the 15 Henry Street address on December 27, 2021, and the lack of returned mailings to the Court suggested it may be his residence.  <u>See</u> ECF No. 7 at 16.  It is worth noting, however, that Plaintiffs did not include in their submissions any information as to why they believe the Bristol address to be Mr. Cornish's home address.

Turning to service of the motion for default on the corporate Defendants, there are similar defects.  As to 6IX9INE Touring, the record did not include any information to establish that the New Hyde Park address was its business address.  Given that mailings by the Court within a few weeks of the alleged service of the default motion were returned to the Court, there is reason to doubt that the New Hyde Park was a valid address for service.  Plaintiffs' service via the Secretary of State

also failed as this government agency is not a substitute address for purposes of serving a default motion.

As to 1st Call Entertainment, service was made at the 15 Henry Street address in Bristol, Connecticut.  The record does not show that this address is a valid address of this corporate defendant for service, even assuming it is Mr. Cornish's residence.

As for Murda Management, other than the affidavits of service, Plaintiff did not provide evidence that the Pompano Beach address to which they mailed the motion papers is the company's last known business address.  See Vergara, 2020 WL 1034393, at *5.  Mailings to the Pompano Beach address were returned to the Court with the notation "Vacant."  ECF Nos. 19, 20.

Thus, Plaintiffs did not show that they satisfied Local Rule 55.2(c), except possibly as to Mr. Cornish.

### 3.   Plaintiffs Failed To Comply With The Servicemembers Civil Relief Act As To Defendants Hernandez And Cornish

#### A.   The Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]"  50 U.S.C. Sec. 3931(b)(1)(A); see Uribe v. Nieves, 17 Civ. 5155 (RRM)

(RER), 2018 WL 4861377, at *1-2 (E.D.N.Y. Sept. 26, 2018) (noting that the affidavit may not be based on conclusory statements); Gustavia Home, LLC v. Derby, 16 Civ. 4260 (ENV), 2017 WL 9989600, at *2 (E.D.N.Y. May 16, 2017) (denying default judgment where plaintiff did not provide "any documentation to support its claim that defendant [ ] is not in the military, nor do its motion papers offer any hint that it undertook an investigation into his military status"). For example, in Bhagwat v. Queens Carpet Mall, Inc., No. 14 Civ. 5474 (ENV) (PK), 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015), the court held that plaintiffs did not satisfy the requirements of the Act even though, as part of their motion for default judgment, the plaintiffs filed an affidavit of service in which the process server averred that the individual defendant was not in military service. "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgement is to be entered." Pruco Life Ins. Co. of N.J. v. Estate of Locker, No. 12 Civ. 882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012) (internal citations omitted); see Windward Bora, LLC v. Ortiz, 21 Civ. 04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), report & recommendation adopted, 2022

55

WL 3647586 (E.D.N.Y. Aug. 24, 2022); Guanglei Jiao, 2020 WL 6370148, at *8.

### B.    Application Of The Servicemembers Relief Act in This Case

The motion for default judgment did not contain an affidavit or similar document confirming a reasonable investigation into the question of whether the individual Defendants Hernandez and Cornish are on active military service. The references to an inquiry as to Mr. Cornish's military status included in the affidavit for service of the summons and complaint did not satisfy the statutory requirements.  For this reason, the motion for a default judgment is deficient as to the individual Defendants.  The undersigned respectfully recommends that the default judgment motion as to Defendants Cornish and Hernandez be denied without prejudice for this additional reason.

### 4.    Plaintiffs Did Not Establish That The Court Has Subject Matter Jurisdiction Based On Complete Diversity Because Plaintiffs Did Not Disclose The Membership Of The Two Limited Liability Company Defendants And The Member's Or Members' Citizenship

### A.    Disclosure Requirements

The disclosure of the membership of limited liability company defendants and their citizenship is required in order to maintain diversity jurisdiction.  See Kenshoo, Inc. v. Aragon Advert., LLC, 586 F. Supp. 3d 177, 180 (E.D.N.Y. 2022) (dismissing complaint when plaintiff failed to identify members

of defendant limited liability corporation in response to an order to show cause); Miranda v. Luzuriaga, No. 21 Civ. 7148 (ARR) (SJB), 2022 WL 508820, at *2 (E.D.N.Y. Feb. 3, 2022), report & recommendation adopted, 2022 WL 504122 (E.D.N.Y. Feb. 18, 2022) (finding that plaintiff failed to establish diversity jurisdiction because plaintiff did not disclose defendant LLC's "members or their citizenship"); Brown v. Diversified Maint. Sys., LLC, No. 16 Civ. 230, 2016 WL 3207712, at *3 (W.D.N.Y. June 10, 2016) (finding lack of diversity jurisdiction where LLC "defendant never affirmatively state[d] its citizenship") (collecting cases).

####   B.   Analysis

The filings in this case did not disclose the members of 1st Call Entertainment LLC or Murda Management LLC or their citizenship. Without this information in the record, the Court cannot determine that diversity jurisdiction exists. The undersigned respectfully recommends that Plaintiffs be ordered to comply with the proposed order to show cause to produce the necessary information for the Court to evaluate whether subject matter jurisdiction exists.

### 5.   Plaintiffs Did Not Establish That Venue Is Proper In This District

####   A.   Venue Requirements

Venue may not lie in this District. See 28 U.S.C. § 1391(b). The complaint states that Plaintiff Dominguez is a

resident of Texas, and Plaintiff JJD Entertainment is incorporated in Texas.  See ECF No. 1 ¶¶ 1-2.  Defendant Cornish resides in Connecticut; 1st Call Entertainment is incorporated in Connecticut.  See id. ¶¶ 4, 6; ECF No. 22-2 at 2-3.  Murda Management had offices in Florida.  See ECF Nos. 1 ¶ 7, 22-2 at 2.  6IX9INE Touring is incorporated in New York, and the summons and complaint were delivered to a New Hyde Park address and the Secretary of State of New York.  See ECF Nos. 1 ¶ 5, 22-2 at 3.  Plaintiffs did not provide a residence for Mr. Hernandez but delivered process to the New Hyde Park address used to serve 6IX9INE Touring and to the Secretary of State of New York.  See ECF No. 22-2 at 3.  The facts giving rise to this action occurred in Texas.  See ECF No. 1 ¶¶ 9-25.

When jurisdiction is founded solely upon diversity and all defendants do not reside in the same state, venue is proper in a district where a "substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. Sec. 1391(b)(2).  The determination of substantiality for venue purposes "is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432-33 (2d Cir. 2005).

Any defects in venue may be waived, see Fed. R. Civ. P. 12(b)(3), and challenges to venue are "waive[d] . . . by failing seasonably to assert it, or even simply by making default." Hoffman v. Blaski, 363 U.S. 335, 343 (1960).

### B. Additional Information Is Needed To Evaluate Venue

The Court is not clear on the basis for venue here. Based on Plaintiffs' description of the relevant events, none of the contested events occurred in New York. Only two Defendants reside in New York. Plaintiffs did not offer another basis for venue, such as a possible venue provision in their agreement with Defendants. As explained above, Defendants except for 6IX9INE Touring were not served with the complaint and summons so they did not have the opportunity to address venue. They cannot be said to have waived any venue objections. Given that Plaintiffs' submissions on the default motion and the Court record did not make clear the basis for venue, the Court respectfully recommends that Plaintiffs be required to show cause as to why venue is proper in this District and why this action should not be transferred to the Southern District of Texas. See 28 U.S.C. § 1391(b)(2).

### 6. Conclusions

For the reasons stated above, the Court respectfully recommends that the motion for a default judgment be denied

59

without prejudice because a) service is defective as to all Defendants except 6IX9INE Touring, such that the Court lacks personal jurisdiction over these Defendants except 6IX9INE Touring; b) Plaintiffs violated several Local Rules in connection with this default judgment motion; c) Plaintiffs did not comply with the Servicemembers Civil Relief Act such that this motion against the individual Defendants Cornish and Hernandez is not proper; and d) the Court questions whether constitutionally sufficient personal jurisdiction; complete diversity and, relatedly, subject matter jurisdiction; and proper venue, exist in this action.  Together, these issues with this motion and this action support a denial of the motion for a default judgment without prejudice.

## III. Objections

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections.  Failure to file objections within fourteen days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir.

2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

The Court will mail a copy of this report and recommendation to the addresses available in the record for Defendants, although, as discussed above, several of these addresses may be defective: Daniel Hernandez a/k/a Tekashi 69, 3000 Marcus Ave. Suite 1WF, New Hyde Park, NY 11042; Daniel Hernandez a/k/a Tekashi 69, 3000 Marcus Ave. Suite 1W5, Lake Success, NY 11042; Will Cornish, 15 Henry St., Bristol, CT 06010; Will Cornish, 414 Tiffany Ln., Bristol, CT 06010; 6IX9INE Touring Inc., 3000 Marcus Ave. Suite 1WF, New Hyde Park, NY 11042; 6IX9INE Touring Inc., 3000 Marcus Ave. Suite 1W5, Lake Success, NY 11042; 1st Call Entertainment LLC, 15 Henry St., Bristol, CT 06010; 1st Call Entertainment LLC, 414 Tiffany Ln., Bristol, CT 06010; Murda Management, LLC, 4611 N. Federal Hwy.,

Apt. 139, Pompano Beach, FL 33064; Murda Management, LLC, 4611

N. Federal Hwy, Apt. 122, Pompano Beach, FL 33064; and Murda

Management, LLC c/o Linn Corporation, 1730 S. Federal Hwy, Suite

102, Delray Beach, FL 33483.

Dated:    Brooklyn, New York
          February 22, 2023


                              *Vera M. Scanlon*
                              VERA M. SCANLON
                              United States Magistrate Judge